UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JERMAINE MCRAE,

                Plaintiff,

   -v-                                            1:14-CV-236

THE CITY OF HUDSON; GARY GRAZIANO, Commissioner; ELLIS RICHARDSON, Chief; EDWARD L. MOORE, Chief; RANDY CLARKE, Sergeant; NICHOLAS M. PIERRO, Police Officer #33; OFFICER ROWE, Police Officer #66; KEYSER, Police Officer; KEVIN SWEET, Police Officer #53; and JOHN DOE POLICE OFFICERS #1-8,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| STOLL, GLICKMAN & BELLINA, LLP<br>Attorneys for Plaintiff<br>475 Atlantic Avenue, 3d Floor<br>Brooklyn, NY 11217 | LEO GLICKMAN, ESQ. |
| GOLDBERG SEGALLA, LLP<br>Attorneys for Defendants The City of Hudson,<br>   Graziano, Richardson, and Moore<br>8 Southwoods Boulevard, Suite 300<br>Albany, NY 12211 | JONATHAN M. BERNSTEIN, ESQ. |
| BONACIC & McMAHON, LLP<br>Attorneys for Defendant Clarke<br>90 Crystal Run Road, Suite 104<br>Middletown, NY 10941 | JAMES V. GALVIN, ESQ. |
| McCABE & MACK LLP<br>Attorneys for Defendants Pierro, Rowe,<br>   Keyser, and Sweet<br>P.O. Box 509<br>63 Washington Street<br>Poughkeepsie, NY 12602 | DAVID L. POSNER, ESQ. |

DAVID N. HURD
United States District Judge

# MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

Plaintiff Jermaine Mcrae ("plaintiff" or "Mcrae"), an African–American who resides in the City of Hudson, New York, initiated this action on March 4, 2014. He asserts various civil rights claims against defendants The City of Hudson ("the City"); Gary Graziano, Commissioner of the Hudson Police Department ("HPD") ("Commissioner Graziano"); Ellis Richardson, former Chief of the HPD ("Chief Richardson"); Edward L. Moore, current Chief of the HPD ("Chief Moore"); Randy Clarke, a sergeant in the HPD ("Sgt. Clarke"); and HPD officers Nicholas M. Pierro ("Officer Pierro"), Rowe ("Officer Rowe"), Keyser ("Officer Keyser"), Kevin Sweet ("Officer Sweet"), and eight currently unnamed officers ("John Does 1–8").[1]

On April 8, 2014, the City, Commissioner Graziano, Chief Richardson, and Chief Moore filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule __"). Sgt. Clark filed a similar motion the following day, and Officers Pierro, Rowe, Keyser, and Sweet filed a motion to dismiss the day after. Plaintiff opposes the three motions to dismiss and has filed a cross-motion seeking leave to file an amended complaint. All motions have been fully briefed and were considered on submit without oral argument.

## II. FACTUAL BACKGROUND

The following pertinent facts, taken from the proposed amended complaint, are assumed true for the purposes of the motions to dismiss. See Chambers v. Time Warner,

---

[1] All individual defendants are sued in their official and individual capacities.

Inc., 282 F.3d 147, 152 (2d Cir. 2002).

In the proposed amended complaint, Mcrae details a series of harassing conduct by members of the HPD. The first incident occurred on June 8, 2011, when Officer Keyser stopped a taxi in which plaintiff was a passenger. After Keyser allowed the taxi driver to leave without a ticket, plaintiff remarked: "I wish it was that easy for me." Proposed Am. Compl., ¶ 14, ECF No. 26-2. Officer Keyser followed the taxi to its destination and, when plaintiff exited the vehicle, asked him: "You got a fucking problem?" Id. ¶ 15. Mcrae ignored the remark and entered a nearby house. Officer Keyser remained in the area and approached plaintiff when he exited the house approximately fifteen minutes later. The officer again asked whether there was "a fucking problem" and drove alongside plaintiff as he walked down the sidewalk. Mcrae went to the police station later that day to file a complaint, but Sgt. Clarke advised that the HPD did not have a procedure through which to complain about officers.

Three days later, on June 11, 2011, Mcrae was in a bar on Warren Street in the City. At approximately 11:30 p.m. he stepped outside to smoke a cigarette and found Officers Keyser and Rowe standing outside the bar. Officer Keyser stated: "There he goes right there." Id. ¶ 18. Plaintiff walked back inside the bar, but the officers remained just outside the door and watched him through the front window. Later in the evening, Mcrae again stepped outside the bar and had a brief exchange with the officers. Generally, he asked them to stop harassing him, to which Officer Keyser replied, in sum and substance: "Wait until you leave the bar . . . you haven't seen harassment yet." Id.

Mcrae left the bar at approximately 1:45 a.m. on June 12 and was promptly arrested by Officers Keyser and Rowe. They transported him to the HPD station and brought him to

the basement garage area, where—according to plaintiff—there are no surveillance cameras. Officers Keyser and Rowe physically assaulted him while he remained handcuffed. Plaintiff suffered visible injuries, which the officers did not document in the arrest report. He was charged with harassment and disorderly conduct, and was released with an appearance ticket. Plaintiff went to the HPD station the following Monday and filed a complaint with Sgt. Clarke. However, nobody ever contacted him to discuss this complaint.

On June 16, 2011, as Mcrae sat on the front steps of his building on Warren Street in the City, an Officer Finn of the HPD approached and asked to speak with him. Plaintiff refused and walked inside his building. The officer unsuccessfully attempted to follow him into the building. He was subsequently charged with littering as a result of this interaction with Officer Finn, who is not a named defendant in this action.

On March 17, 2012, Mcrae was again arrested for disorderly conduct. He reports that Sgt. Clarke arrested him even though he was not involved in the verbal altercation that necessitated the police response on that date. On April 10, 2012, on the advice of counsel, plaintiff pleaded guilty to one "graffiti" charge in satisfaction of all charges lodged against him between June 11, 2011, and March 17, 2012.

On August 5, 2012, Sgt. Clarke—who was dressed in street clothes and appeared to be off-duty—approached Mcrae in front of plaintiff's building. Sgt. Clarke stated: "You know what? I don't like you, let's do this now." Id. ¶ 26. Mcrae attempted to walk away, but Sgt. Clarke followed and slapped him in the face. Plaintiff again tried to walk away and called the police with his cellular phone. Sgt. Clarke called him a "little bitch" and accused him of trying to record the incident. Sgt. Clarke then attempted to punch plaintiff in the face. Plaintiff punched him back, retreated into his building, and asked the police dispatcher to send the

state police or county sheriff's deputies. However, Officers Sweet and Pierro responded and immediately arrested plaintiff.

Mcrae was again taken to the basement garage at the HPD station and was beaten while handcuffed. He began to experience difficulty breathing, and an ambulance was eventually summoned. At the hospital he was diagnosed with a fractured rib, contusions, and abrasions. Chief Richardson responded to the hospital and asked Mcrae about the various prior incidents involving HPD officers. Plaintiff was charged with assaulting a police officer and possession of marijuana as a result of this incident. Those charges were later dismissed.

According to plaintiff, an "outside agency" began investigating the HPD in February 2013. Id. ¶¶ 33–34. Chief Richardson announced his retirement shortly thereafter, and was presumably succeeded by Chief Moore. Richard Paolino, an HPD lieutenant who is not a named defendant in this action, contacted plaintiff on February 6, 2013, and asked to speak with him regarding an internal investigation. Plaintiff agreed, but insisted on having an attorney present. He was not contacted thereafter, and Lt. Paolino reportedly retired in April 2013.

## III. DISCUSSION

### A. Cross-Motion to Amend

After defendants filed their motions to dismiss, Mcrae filed a cross-motion seeking leave to file an amended complaint. Leave to amend a pleading should be freely given "when justice so requires." FED. R. CIV. P. 15(a)(2). Where a plaintiff seeks to amend his complaint while a motion to dismiss is pending, a court "has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the

merits of the motion in light of the amended complaint." Roller Bearing Co. of Am., Inc. v. Am. Software, Inc., 570 F. Supp. 2d 376, 384 (D. Conn. 2008) (internal quotation marks omitted).

As defendants had sufficient opportunity to respond to the proposed amended complaint, and Mcrae does not seek to add new defendants or causes of action, the merits of the motions to dismiss will be considered in light of the proposed amended complaint. If the proposed amended complaint cannot survive the motions to dismiss, then plaintiff's cross-motion to amend will be denied as futile. See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002).

Liberally construing the proposed amended complaint, and as informed by his motion papers, Mcrae brings the following federal claims: (1) excessive force/failure to intervene/or, alternatively, a substantive due process claim in relation to the June 12, 2011, incident, against Sgt. Clarke, Officers Rowe and Keyser, and John Does 1–8 ("First Cause of Action"); (2) excessive force/failure to intervene/or, alternatively, a substantive due process claim, false arrest/false imprisonment, and malicious prosecution in relation to the August 5, 2012, incident, against Sgt. Clarke, Officers Pierro and Sweet, and John Does 1–8 ("Second, Fourth, and Fifth Causes of Action"); and (3) a separate claim detailing the municipal and supervisory liability of the City, Commissioner Graziano, Chief Richardson, and Sgt. Clarke ("Third Cause of Action"). He also repeatedly alleges that defendants "conspired to deprive plaintiff of his civil . . . rights." Proposed Am. Compl. ¶¶ 42, 46, 63, 68.[2]

---

[2] Although plaintiff lists Chief Richardson in the heading of each cause of action, he has clarified that the only claim asserted against Chief Richardson is the Third Cause of Action and the request for injunctive relief. See Pl.'s Mem. Opp'n Dismiss 10, ECF No. 38 (The pagination corresponds to the page numbers as assigned on CM/ECF.). Moreover, in an apparent concession to defendants' initial argument in favor of
(continued...)

Mcrae seeks injunctive relief mandating the installation of video cameras throughout the HPD station, the preservation of video footage, and the establishment of an independent review board to investigate civilian complaints regarding HPD officers. He also seeks compensatory and punitive damages as well as attorneys' fees and costs.

### B. Rule 12(b)(6) Motions to Dismiss—Legal Standard

Defendants argue that the proposed amended complaint must be dismissed, pursuant to Rule 12(b)(6), because it fails to state any claims upon which relief may be granted. To survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), more than mere conclusions are required. Indeed, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims. See Twombly, 550 U.S. at 570 (requiring "only enough facts to state a claim to relief that is plausible on its face"). When considering a motion to dismiss, the complaint is to be construed liberally, all factual allegations are to be deemed true, and all reasonable inferences must be drawn in the plaintiff's favor. Chambers, 282 F.3d at 152.

---

[2](...continued)
dismissing any state law claims, plaintiff now reports that he "makes no state law claims against defendants." Id. Therefore, the pendent state claims for false arrest/false imprisonment ("Fourth Cause of Action"), malicious prosecution ("Fifth Cause of Action"), assault ("Sixth Cause of Action"), and battery ("Seventh Cause of Action") in the proposed amended complaint will be dismissed.

## C. The City, Commissioner Graziano, Chief Richardson, and Chief Moore

Mcrae's claims against the City, Commissioner Graziano, Chief Richardson, and Chief Moore are unclear. In his opposition papers, he reports that he "has no causes of action against these defendants except for the Third Cause of Action and the claim for injunctive relief." Pl.'s Mem. Opp'n Dismiss 10. The Third Cause of Action is not a substantive civil rights claim. It instead simply details allegations in support of municipal and supervisory liability, and provides background regarding his requested prospective injunctive relief. As he explains in his opposition papers, plaintiff only names Chief Moore in the proposed amended complaint for purposes of the requested injunctive relief.[3]

In fact, plaintiff's entire opposition to the motion made by these defendants addresses only his request for injunctive relief. He appears to have abandoned the claims against Commissioner Graziano and Chief Richardson in their supervisory roles as well as the substantive claims against the City, pursuant to municipal liability.[4] See Barmore v. Aidala, 419 F. Supp. 2d 193, 201–02 (N.D.N.Y. 2005) (McAvoy, S.J.) ("The failure to oppose a motion to dismiss a claim is deemed abandonment of the claim, and, in the Northern District

---

[3] This obviates the need to address defendants' assertion that all substantive claims against Chief Moore must be dismissed for lack of personal involvement in the alleged constitutional deprivations. As outlined in the proposed amended complaint, Chief Moore assumed his position after the incidents that form the basis of the substantive civil rights claims. As such, it is assumed that he has been sued in his official capacity only in relation to plaintiff's requested prospective injunctive relief.

[4] Nor would such claims survive the motion to dismiss. Indeed, the proposed amended complaint contains only conclusory allegations that these supervisory defendants failed to remedy the violative conduct of their employees, created a policy or custom under which the injurious conduct occurred, allowed such policy or custom to continue, and/or were grossly negligent in managing and supervising their subordinates. There are no factual allegations to support such bald assertions or to suggest Commissioner Graziano or Chief Richardson had any direct personal involvement in or knowledge of the ongoing alleged constitutional violations. Plaintiff instead attempts to hold these defendants liable simply due to their supervisory roles, which is impermissible under § 1983. See Banks v. Annucci, __ F. Supp. 3d __, 2014 WL 4824716, at *19–20 (N.D.N.Y. 2014) (dismissing supervisory claims that were comprised of wholly conclusory allegations and collecting cases). Plaintiff's general assertions of municipal liability are similarly conclusory.

of New York, is deemed consent to granting that portion of the motion." (internal citations omitted)). Instead, the language of his opposition papers indicates that plaintiff seeks to bring claims against the City and these officials for prospective injunctive relief only. Therefore, the municipal and supervisory liability portions of the Third Cause of Action will be dismissed and this cause of action will be limited to informing plaintiff's requested injunctive relief.

The City, Commissioner Graziano, Chief Richardson, and Chief Moore argue that plaintiff lacks standing to seek injunctive relief because there is no real danger of future harm.[5] Both parties acknowledge Mcrae's request for injunctive relief requires a showing "that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983) (internal quotation marks omitted). Importantly, allegations of past illegal conduct directed at plaintiff, alone, do not "show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." Id. (internal quotation marks and alteration omitted). Plaintiff must instead show a real threat of future injury; to wit, a likelihood that he will again be harassed, arrested, assaulted, or falsely charged by HPD officers. See id. at 102–03; Shain v. Ellison, 356 F.3d 211, 215 (2d Cir. 2004).

The parties each rely on Lyons and, unsurprisingly, reach different conclusions based on Mcrae's allegations. The plaintiff in Lyons had been placed in an illegal chokehold by a Los Angeles police officer during a routine traffic stop. Lyons, 461 U.S. at 97–98. He sought

---

[5] The City also correctly notes that plaintiff may not recover punitive damages from the municipality. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 263–71 (1981).

prospective injunctive relief prohibiting officers from using chokeholds. Id. at 98. The United States Supreme Court dismissed the case for lack of standing because plaintiff's assertion that he may again be subject to an illegal chokehold in the future was too speculative. Id. at 105.

Mcrae's factual allegations distinguish this matter from Lyons. In the proposed amended complaint, he details a series of at least five episodes of harassment by members of the HPD, not an isolated incident as in Lyons. These incidents took place over a fourteen-month period, involved two separate instances during which he was physically assaulted out of view of surveillance cameras, and were perpetrated by at least two common defendants, Officer Keyser and Sgt. Clarke. Such allegations of repeated unlawful conduct "strengthens a plaintiff's argument that future injury is likely." Roe v. City of New York, 151 F. Supp. 2d 495, 502–03 (S.D.N.Y. 2001) (collecting cases).

Moreover, the allegations support a reasonable inference that plaintiff has been singled out by HPD officers. For example, he claims Officer Keyser waited for him to exit a residence on June 8, 2011, and verbally harassed him as he walked down the street. He further reports that Officers Keyser and Rowe waited for him outside a bar on June 12, 2011, and told him to "[w]ait until you leave the bar . . . you haven't seen harassment yet." Proposed Am. Compl. ¶ 18. He also alleges that Sgt. Clarke arrested him in March 2012, even though he was not involved in the incident that required police intervention, and approached him while off-duty in August 2012 to instigate an altercation. Such allegations of specific targeting by the same defendants over a period of time were not present in Lyons. In addition, the plaintiff in Lyons had apparently undisputably committed a traffic infraction, whereas Mcrae alleges that he was never even suspected of breaking the law—again

suggesting targeted conduct.

Finally, the difference in population and geographic size between Los Angeles and the City of Hudson is obvious. It is much more likely that plaintiff will again encounter, or be targeted by, the individual defendant officers in the City of Hudson. Also, although plaintiff references an outside agency's investigation of the HPD, there is no suggestion that any of the involved officers have been disciplined or instructed against harassing him in the future. Nor has the alleged lack of adequate surveillance cameras been remedied.

In short, taking the allegations as true at this stage of the litigation, they evidence a likelihood that Mcrae will encounter similar conduct by HPD officers in the future. His allegations of future harassment or harm are not merely speculative as in Lyons. Therefore, plaintiff has adequately stated a claim for prospective injunctive relief. This claim is properly asserted against Chief Moore and Commissioner Graziano in their official capacities only. See Melendez v. Schneiderman, No. 9:13-CV-622, 2014 WL 2154536, at *8 n.13 (N.D.N.Y. May 22, 2014) (Sharpe, C.J. & Baxter, M.J.) ("The court notes that for purposes of injunctive or declaratory relief, the supervisory official who has the authority to bring about the specific injunctive relief plaintiff seeks, is an appropriate defendant." (citing Kuck v. Danaher, 822 F. Supp. 2d 109, 137–40 (D. Conn. 2011)). As alleged in the proposed amended complaint, Chief Moore and/or Commissioner Graziano have the authority to implement the requested injunctive relief.[6]

Accordingly, defendants' motion to dismiss the claim for prospective injunctive relief will be denied, but this claim is only asserted against Chief Moore and Commissioner

---

[6] While discovery may reveal that one of these defendants does not have such authority, both defendants will remain in the case at this early stage of the litigation.

Graziano in their official capacity. All federal claims against the City and Chief Richardson will be dismissed and those defendants shall be removed from the caption.

### D. Sgt. Clarke

Sgt. Clarke argues that all claims against him must be dismissed because: (1) he was not personally involved in the alleged use of excessive force on June 12, 2011; (2) he was off-duty, and thus not acting under color of state law, during the August 5, 2012, incident; (3) he was not personally involved in the arrest, use of force, or prosecution stemming from the August 5, 2012, incident; (4) plaintiff fails to plead adequate factual allegations to support his conspiracy claim; and (5) he is otherwise entitled to qualified immunity for all of his conduct.

#### 1. June 12, 2011 Incident

Mcrae argues that, by failing to take his complaint seriously on June 8, 2011, Sgt. Clarke failed to intervene in the ongoing harassment by Officer Keyser, which culminated in the alleged use of excessive force/assault on June 12, 2011.

A police officer is personally involved in the use of excessive force if he "directly participates in an assault, or was present during the assault with reasonable opportunity to intercede on plaintiff's behalf yet failed to do so." Espada v. Schneider, 522 F. Supp. 2d 544, 555 (S.D.N.Y. 2007). Under the latter theory, plaintiff must prove the use of excessive force by an individual and show that the defendant who allegedly failed to intervene: "1) possessed actual knowledge of the use . . . of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force." Lewis v. Mollette, 752 F. Supp. 2d 233, 244 (N.D.N.Y. 2010) (internal quotation marks omitted).

Even assuming the allegations in the proposed amended complaint are true, Mcrae fails to plausibly allege that Sgt. Clarke had a realistic opportunity to intervene in the June 12, 2011, incident of excessive force perpetrated by Officers Keyser and Rowe. He merely alleges that, following the verbal harassment by Officer Keyser on June 8, he went to the HPD station to lodge a complaint but was informed by Sgt. Clarke that no procedure to file a complaint existed. There are no allegations regarding the substance of his conversation with Sgt. Clarke. While it is reasonable to infer Mcrae told Sgt. Clarke that Officer Keyser had followed him down the street and taunted him, there are no allegations that plaintiff reported threats of physical harm. Such distinguishes this case from Benitez v. Ham, No. 9:04-CV-1159, 2009 WL 3486379 (N.D.N.Y. Oct. 21, 2009) (Mordue, C.J. & Lowe, M.J.), upon which plaintiff relies. Indeed, the plaintiff in Benitez reportedly advised the supervising defendant that a subordinate had threatened to physically harm him the day before the actual assault. Id. at *25.

In short, Sgt. Clarke did not possess actual knowledge that plaintiff faced a credible, imminent threat of being subjected to excessive force by Officers Keyser and Rowe. Nor is there any indication that he was present during the alleged assault, which occurred over three days later, or had a realistic opportunity to intercede therein to prevent the alleged harm. Accordingly, Sgt. Clarke's motion to dismiss the excessive force claim, as it relates to the June 12, 2011, incident, will be granted.

### 2. **August 5, 2012 Incident**

Mcrae argues that, even though Sgt. Clarke was off duty and in street clothes, the circumstances surrounding the August 5, 2012, incident indicates such occurred under the color of law and suggests he was directly responsible for the alleged use of excessive force,

false arrest, and malicious prosecution.

An essential element of a § 1983 claim is that "the conduct complained of must have been committed by a person acting under color of state law." Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994). Such conduct must happen "under pretense of law," and the actions of officers taken in their "personal pursuits" are excluded. Id. at 547–48 (internal quotation marks omitted). However, there is no defined test to determine whether conduct occurs under the color of law, and courts must instead consider the totality of the circumstances. "More is required than a simple determination as to whether an officer was on or off duty when the challenged incident occurred." Id. at 548. Indeed, an off-duty officer may nonetheless be held liable under § 1983 if he "invokes the real or apparent power of the police department." Id.

Mcrae has pleaded sufficient factual allegations from which it can be reasonably inferred that Sgt. Clarke invoked the power of the police department during the August 5, 2012, incident. Sgt. Clarke—who knew plaintiff through his prior professional interaction with him, not through his personal pursuits—reportedly approached plaintiff, stated "I don't like you, let's do this now," and then slapped him in the face. Proposed Am. Compl. ¶¶ 26–27. According to plaintiff, instead of immediately fighting back, he attempted to walk away, called 911, and specifically requested the presence of law enforcement outside of the HPD. Such a reaction could be viewed as an acknowledgment of Sgt. Clarke's status as a member of the HPD.

Moreover, the fact that only HPD officers responded to the incident and Mcrae—not Sgt. Clarke—was arrested and charged further supports a reasonable inference that Sgt. Clarke exercised his professional influence and authority during the incident. Similarly, at

least at this early stage of the litigation, it is reasonable to infer that Sgt. Clarke could have intervened to prevent the alleged use of excessive force and had a primary role in the decision to arrest and prosecute plaintiff for this incident.

Accordingly, Sgt. Clark's motion to dismiss the excessive force, false arrest, and malicious prosecution claims against him related to the August 4, 2012, incident will be denied.

### 3. **Conspiracy**

In support of his § 1983 conspiracy claim, Mcrae again points to Sgt. Clarke's refusal to take a complaint from him on June 8, 2011. He also claims Sgt. Clarke failed to investigate his formal complaint filed after the June 12, 2011, incident; falsely arrested him on March 17, 2012; and instigated the physical altercation with him on August 5, 2012, which resulted in his arrest and assault. He concludes that such allegations establish a conspiracy between Sgt. Clarke and Officers Rowe, Keyser, Pierro, and Sweet to violate his constitutional rights.

Sgt. Clarke has adopted the legal arguments put forth by his co-defendants, which includes an assertion that the conspiracy claim must be dismissed pursuant to the intracorporate conspiracy doctrine. Under that doctrine, "officers, agents and employees of a single corporate entity are legally incapable of conspiring together." Quinn v. Nassau Cnty. Police Dep't, 53 F. Supp. 2d 347, 359 (E.D.N.Y. 1999). An exception to this general rule exists where the individual defendants, despite being a part of the same entity, "are pursuing personal interests wholly separate and apart from the entity." Id. (internal quotation marks omitted).

Mcrae fails to allege any factual allegations to trigger this narrow exception.[7]  As noted above, his only interaction with these individual defendant officers is through their professional duties, which they carried out under the color of law.  There is no suggestion they had a personal connection to him or were motivated by personal reasons wholly separate and apart from the HPD.  See Little v. City of New York, 487 F. Supp. 2d 426, 442 (S.D.N.Y. 2007) (dismissing § 1983 conspiracy claim pursuant to the intracorporate conspiracy doctrine because plaintiff "does not provide any evidence to suggest that [defendants] were motivated by an independent personal stake in his arrest and prosecution").

Accordingly, the § 1983 conspiracy claim will be dismissed pursuant to the intracorporate conspiracy doctrine.

### 4. Qualified Immunity

Finally, Sgt. Clarke asserts he is entitled to qualified immunity inasmuch as he followed HPD policies and procedures.  Mcrae does not offer any legal argument in opposition to this assertion.  Regardless, Sgt. Clarke is not entitled to qualified immunity at this time.  The remaining claims against him involve the August 5, 2012, incident in which he allegedly instigated a physical confrontation with plaintiff while cloaked with the authority of the HPD.  He then reportedly orchestrated plaintiff's false arrest, which subsequently led to the use of excessive force, an assault by the arresting officers, a coverup, and the filing of trumped up charges against plaintiff.  Such allegations do not involve any formal established

---

[7] It is again noted that plaintiff did not delineate a specific cause of action for his conspiracy claim and instead simply littered the proposed amended complaint with assertions that defendants "conspired" against him.

HPD policies or procedures. Nor would a reasonable officer believe such conduct was within the bounds of appropriate police conduct. See X–Men Sec., Inc. v. Pataki, 196 F.3d 56, 66 (2d Cir. 1999) (holding that officials are entitled to qualified immunity if their actions were objectively reasonable in light of clearly established law).

Accordingly, Sgt. Clarke's assertion of qualified immunity is rejected.

### E. Officers Pierro, Rowe, Keyser, and Sweet

Officers Pierro, Rowe, Keyser, and Sweet argue that any substantive due process claim asserted against them pursuant to the Fourteenth Amendment must be dismissed because the Fourth Amendment is the sole remedy for excessive force claims.[8] In response, Mcrae claims he has pleaded substantive due process claims in the alternative. He essentially argues that if discovery reveals the officers did not intend to seize him within the meaning of the Fourth Amendment, then he should be permitted to pursue a substantive due process claim for arbitrary and conscience-shocking government behavior that caused a deprivation of his liberty.

Generally, excessive force claims are properly analyzed under a reasonableness standard based in the Fourth Amendment, not the substantive due process clause of the Fourteenth Amendment. See Graham v. Connor, 490 U.S. 386, 395 (1989). However, the United States Supreme Court has clarified that Graham simply held that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific

---

[8] These defendants also maintain that the § 1983 conspiracy claim and all state law claims must be dismissed. The conspiracy claim has already been addressed above and will be dismissed pursuant to the intracorporate conspiracy doctrine. Similarly, as previously noted, plaintiff has abandoned his state claims.

- 17 -

provision, not under the rubric of substantive due process." United States v. Lanier, 520 U.S. 259, 272 n.7 (1997) (citing Graham, 490 U.S. at 394); see also Malay v. City of Syracuse, 638 F. Supp. 2d 303, 313–14 (N.D.N.Y. 2009) (McCurn, S.J.).

The issue thus becomes whether Mcrae's claims are covered by the Fourth Amendment. At this early stage of the litigation, the exact circumstances of the defendants' conduct is not entirely clear. According to the proposed amended complaint, the officers' conduct could be characterized in one of two ways. If they used unreasonable and excessive force while intentionally seizing and arresting Mcrae, such is actionable under the Fourth Amendment. See Graham, 490 U.S. at 394–95. On the other hand, if the defendant officers arbitrarily sought him out and assaulted him completely unrelated to any official seizure, such would arguably be actionable under the Fourteenth Amendment. See Cnty. of Sacramento v. Lewis, 523 U.S. 833, 844–46 (1998) (concluding that deprivations of liberty caused by "the most egregious official conduct" and abuse of power may violate the Due Process Clause of the Fourteenth Amendment).

While plaintiff will not be permitted to pursue both avenues of recovery at trial, he need not declare which path he will ultimately follow at this time. See Malay, 638 F. Supp. 2d at 314 (allowing plaintiff's excessive force and substantive due process claims, stemming from the same incident, to go forward to discovery). Accordingly, the motion to dismiss the substantive due process claims will be denied.

## IV. **CONCLUSION**

In his proposed amended complaint, Mcrae adequately alleges an excessive force/failure to intervene/or, alternatively, a substantive due process claim against Officers Rowe and Keyser, and John Does 1–8 in relation to the June 12, 2011, incident. He also

sufficiently pleads excessive force/failure to intervene/or, alternatively, substantive due process, false arrest/false imprisonment, and malicious prosecution claims against Sgt. Clarke, Officers Pierro and Sweet, and John Does 1–8 in relation to the August 5, 2012, incident. If he ultimately prevails on his claims he may seek injunctive relief, to be implemented by either Commissioner Graziano or Chief Moore in their official capacity. The remaining claims asserted in the proposed amended complaint will be dismissed.

Therefore, it is

ORDERED that

1. The motion to dismiss filed by the City of Hudson, Gary Graziano, Ellis Richardson, and Edward Moore (ECF No. 18) is GRANTED in part and DENIED in part;

2. The motion to dismiss filed by Randy Clarke (ECF No. 20) is GRANTED in part and DENIED in part;

3. The motion to dismiss filed by Nicholas M. Pierro, Officer Rowe, Keyser, and Kevin Sweet (ECF No. 22) is GRANTED in part and DENIED in part;

4. Plaintiff Jermaine Mcrae's cross-motion to amend (ECF No. 26) is GRANTED;

5. The Clerk of the Court is directed to file the Amended Complaint (ECF No. 26-2, Ex. A) as the operative pleading;

6. All claims asserted against defendants City of Hudson and Ellis Richardson are DISMISSED and the Clerk is directed to remove those two defendants from the caption;

7. All state law claims (Fourth, Fifth, Sixth, and Seventh Causes of Action) are DISMISSED;

8. All claims against defendants Gary Graziano and Edward Moore in their individual capacities are DISMISSED and those defendants remain in this case in their official

capacities ONLY for purposes of plaintiff's requested prospective injunctive relief;

9. The excessive force/failure to intervene/or, alternatively, substantive due process claim, as it relates to the June 12, 2011, incident, against defendant Randy Clarke is DISMISSED;

10. The § 1983 conspiracy claims against all defendants are DISMISSED;

11. The following federal causes of action remain: (1) the excessive force/failure to intervene/or, alternatively, substantive due process claim, as it relates to the June 12, 2011, incident, against defendants Officer Rowe, Keyser, and John Does 1–8 (First Cause of Action); (2) the excessive force/failure to intervene/or, alternatively, substantive due process, false arrest/false imprisonment, and malicious prosecution claims, as they relate to the August 5, 2012, incident, against defendants Randy Clarke, Nicholas M. Pierro, Kevin Sweet, and John Does 1–8 (Second Cause of Action); and (3) the claim for prospective injunctive relief as informed by the Third Cause of Action[9] against defendants Gary Graziano and Edward Moore in their official capacity only; and

12. Defendants shall file answers to the Amended Complaint on or before February 6, 2015.

IT IS SO ORDERED.

_____
United States District Judge

Dated: January 21, 2015
       Utica, New York.

---

[9] The municipal and supervisory liability claims detailed in the Third Cause of Action are DISMISSED.